IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| R.C.G.,[1]<br><br>**Plaintiff,**<br><br>v.<br><br>**KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,**<br><br>**Defendant.** | Case No. 21-2100-DDC |

**MEMORANDUM AND ORDER**

Plaintiff filed this action under 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's (the "Commissioner") decision to deny plaintiff's claim for Supplemental Security Income under Title XVI of the Social Security Act, as amended. Plaintiff has filed a brief asking the court to reverse the decision of the administrative law judge ("ALJ") and direct an award of benefits. Doc. 14 at 27. The Commissioner has filed a response brief, asking the court to affirm the ALJ's decision. Doc. 19 at 15. Having reviewed the administrative record and the parties' briefs, the court affirms the Commissioner's decision denying benefits. The court explains why, below.

**I.    Background**

On March 20, 2018, plaintiff applied for supplemental security income under Title XVI of the Social Security Act. Doc. 11-3 at 16 (AR 15). He alleged disability beginning on November 13, 2014, based on "degenerative disc disease of the lumbar, thoracic, and cervical

---

[1]    The court makes all its Memoranda and Orders available online. Therefore, as part of the court's efforts to preserve privacy interests of Social Security disability claimants, it has decided to caption opinions in those cases using only plaintiff's initials.

spine; right knee fracture; diabetes mellitus with diabetic neuropathy; depression; anxiety; and history of substance abuse." *Id.* at 16, 19 (AR 15, 18).  The Commissioner denied plaintiff's claim initially on October 30, 2018, *id.* at 16 (AR 15), and again denied the claim upon reconsideration on March 14, 2019.  *Id.*  Plaintiff then requested a hearing before an ALJ, which was held March 17, 2020.  *Id.*

On June 17, 2020, the ALJ issued a written decision concluding that plaintiff was not disabled under the Social Security Act, from March 20, 2018, to the date of the decision.  *Id.* at 17 (AR 16).  Plaintiff then filed an appeal with the Appeals Council of the Social Security Administration.  *Id.* at 2 (AR 1).  On December 23, 2020, the Appeals Council denied the plaintiff's request for review.  *Id.*  Having exhausted the proceedings available before the Commissioner, plaintiff now seeks judicial review and reversal of the final decision denying his supplemental security income.

**II.     Legal Standard**

     **A.     Standard of Review**

Section 405(g) of Title 42 of the United States Code grants federal courts authority to conduct judicial review of final decisions of the Commissioner and "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Judicial review of the Commissioner's denial of benefits is limited to this question:  Whether substantial evidence in the record supports the factual findings and whether the Commissioner applied the correct legal standards.  *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1177 (10th Cir. 2020); *see also Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014); 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" but it is "more than a mere scintilla[.]" *Noreja*, 952 F.3d at 1178 (quotation cleaned up). While the court "consider[s] whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," it neither reweighs the evidence nor substitutes its judgment for the Commissioner's. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation cleaned up). But also the court does not accept "the findings of the Commissioner" mechanically or affirm those findings "by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational." *Alfrey v. Astrue*, 904 F. Supp. 2d 1165, 1167 (D. Kan. 2012). When the court decides whether substantial evidence supports the Commissioner's decision, it "examine[s] the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision[.]" *Id.* "'Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion.'" *Noreja*, 952 F.3d at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005)).

Failing "to apply the proper legal standard may be sufficient grounds for reversal independent of the substantial evidence analysis." *Brown ex rel. Brown v. Comm'r of Soc. Sec.*, 311 F. Supp. 2d 1151, 1155 (D. Kan. 2004) (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). But such failure justifies reversal only in "'appropriate circumstances'"—applying an improper legal standard does not necessarily require reversal in all cases. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting *Glass*, 43 F.3d at 1395); *accord Lee v. Colvin*, No. 12-2259-SAC, 2013 WL 4549211, at *5 (D. Kan. Aug. 28, 2013) (discussing the general rule set out in *Glass*). Some errors are harmless and require no remand or further consideration. *See,*

*e.g.*, *Mays*, 739 F.3d at 578–79; *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161–63 (10th Cir. 2012); *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).

### B.      Disability Determination

Claimants seeking Supplemental Security Income bear the burden to show that they are disabled. *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009). In general, the Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner applies "a five-step sequential evaluation process to determine disability." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (discussing 20 C.F.R. § 416.920 (governing claims for supplemental security income)). As summarized by the Tenth Circuit, this familiar five-step process proceeds in this fashion:

> Step one requires the agency to determine whether a claimant is presently engaged in substantial gainful activity. If not, the agency proceeds to consider, at step two, whether a claimant has a medically severe impairment or impairments. . . . At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [the claimant] from performing [the claimant's] past relevant work. Even if a claimant is so impaired, the agency considers, at step five, whether [the claimant] possesses the sufficient residual functional capability [RFC] to perform other work in the national economy.

*Wall*, 561 F.3d at 1052 (citations and internal quotation marks omitted); *accord* 20 C.F.R. § 416.920(a)(4). The claimant must bear the "burden of proof on the first four steps," but the burden shifts to the Commissioner "at step five to show that claimant retained the RFC to 'perform an alternative work activity and that this specific type of job exists in the national

economy.'" *Smith v. Barnhart*, 61 F. App'x 647, 648 (10th Cir. 2003) (quoting *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). This analysis ends if the Commissioner determines at any point that the claimant is or is not disabled. *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) ("If it is determined that a claimant is or is not disabled at any point in the analysis, the review stops.").

### III. Analysis

At step two of the disability determination process, the ALJ found that plaintiff has the following severe impairments: "degenerative disc disease of the lumbar, thoracic, and cervical spine; right knee fracture; diabetes mellitus with diabetic neuropathy; depression; anxiety; and history of substance abuse." Doc. 11-3 at 19 (AR 18). At step three, the ALJ determined that the plaintiff doesn't meet one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). *Id.* at 20 (AR 19). In line with this determination the ALJ found at step four that plaintiff has the RFC "to perform light work as defined in" 20 C.F.R. § 416.967(b). *Id.* at 23 (AR 22). Specifically, the ALJ found that:

> [T]he claimant can lift and carry up to twenty pounds occasionally and lift or carry up to ten pounds frequently; stand and/or walk for six hours out of an eight-hour workday; and sit for six hours out of an eight-hour workday. [He] should never climb ladders, ropes and scaffolds; and can frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl. [He] can occasionally use foot controls bilaterally. [He] can frequently handle, finger and feel bilaterally. [He] should never work at unprotected heights or with moving mechanical parts; and can occasionally work in vibration. [He] is able to carry out detailed but uninvolved instructions in the performance of simple, routine and repetitive tasks in a low stress work environment with no fast-paced production requirements involving simple work-related decisions, and with only occasional judgment and work place changes. [He] can occasionally respond to and have interaction with the general public.

*Id.*

Based on this RFC finding, the ALJ determined that plaintiff was unable to perform any past relevant work. *Id.* at 32 (AR 31). But, given plaintiff's age, education, work experience, and RFC, the ALJ concluded "there are jobs that exist in significant numbers in the national

5

economy" that plaintiff can perform as delineated in 20 C.F.R. §§ 416.969, 416.969(a). *Id.* Thus, the ALJ determined, plaintiff was not disabled, as the Social Security Act defines that term, from March 20, 2018, to the date of the decision—June 17, 2020. *Id.* at 33 (AR 32).

Important to this case, when making the RFC finding, the ALJ noted plaintiff's subjective reports of pain and his allegations of extreme limitation. *Id.* at 24 (AR 23). At the hearing, plaintiff alleged that he could not work full time. He testified that he couldn't stand for more than ten to 15 minutes at a time because of herniated discs and diabetic neuropathy; that pain in his knees and back interfered with most postural activities; and that he could lift no more than ten pounds or walk more than two to three blocks before resting for five to ten minutes. *Id.* Plaintiff also testified that he had depression and anxiety, which affected his memory and social skills. *Id.* He testified that he "had become increasingly paranoid and tried to avoid changes in routine or situations that increased his stress levels." *Id.* But, the ALJ concluded, plaintiff's reports about "the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" *Id.*

Plaintiff's appeal focuses largely on this finding. In plaintiff's view, the ALJ overstated plaintiff's capabilities in light of his mental and physical health. Plaintiff specifically challenges three aspects of the ALJ ruling. He asserts that: (1) the ALJ erred by finding that plaintiff did not meet a 12.04 or 12.06 Listing for depression or anxiety, respectively; (2) the ALJ erred by finding that plaintiff did not meet the 11.14A or 11.14B Listing for his peripheral neuropathy; and (3) the ALJ erred by finding that plaintiff has the RFC analysis to perform light work. Plaintiff contends that substantial evidence didn't support the ALJ's decisions on these points. The court addresses all three of these three arguments in the context of the administrative record's evidence, in turn, below.

**A.     The ALJ did not err by finding that plaintiff meets neither a 12.04 nor 12.06 Listing.**

Plaintiff first argues that the ALJ erred by finding that his depression (Listing 12.04) and anxiety (Listing 12.06) were severe, but only moderately limiting, and thus didn't suffice to meet or medically equal the listings. Doc. 14 at 17. To establish that he met either one of these Listings, plaintiff must satisfy the "paragraph B" criteria by demonstrating that his mental impairments resulted in "one extreme limitation or two marked limitations in a broad area of functioning." Doc. 11-3 at 21 (AR 20); *see also* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 §§ 12.04(B), 12.06(B). "An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis." *Id.* In contrast, a marked limitation "is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis." *Id.* Within paragraph B there are four criteria, each of which the ALJ addressed, and plaintiff now challenges. *See id.* (discussing the criteria found in 20 C.F.R. Pt. 404, Subpt. P, App'x 1 §§ 12.04(B), 12.06(B)).

*First*, the ALJ found that in "understanding, remembering or applying information, the claimant has a moderate limitation." *Id.* at 22 (AR 21). Plaintiff claimed he struggled with memory deficits and following written instructions. *Id.* The ALJ determined, however, that plaintiff's medical records showed otherwise, with multiple consultations noting "fair judgment and insight, normal speech and thought content, and logical thought process." *See id.* at 27 (AR 26) (citing Ex. B12F/5); *see also id.* at 22 (AR 21) (citing Exs. B2F/4, B7F/12, B12F/5, B12F/14, B16F/6, B16F/8, B16F/10–12, B16F/15, B16F/34, B16F/36).

*Second*, the ALJ found plaintiff had a moderate limitation on his ability to interact with others. *Id.* at 22 (AR 21). In this regard, plaintiff alleged he had become "antisocial and had trouble getting along with others[.]" *Id.* But, the ALJ concluded the medical record established

7

that plaintiff, "continued to maintain good relationships with peers and providers when sober and compliant with psychotropic medications and expressed interest in increasing his positive relationships." *Id.* (citing Exs. B14F/106–09, B14F/176, B16F/5, B16F/60, B17F/14).

*Third*, the ALJ found that plaintiff had a moderate limitation with concentrating, persisting, or maintaining pace. Plaintiff alleged "he struggled with concentration due to a very short attention span and often failed to complete tasks he had started." *Id.* Contrary to plaintiff's assertion, the ALJ found that mental status examinations demonstrated "variability in [plaintiff's] concentration, with [him] at times demonstrating intact attention and concentration and at other times appearing distractible due to racing thoughts during periods of substance use or symptom exacerbations." *Id.* (citing Exs. B2F/40, B7F/12, B12F/5, B12F/14, B16F/8, B16F/15, B16F/24, B16F/34, B16F/36).

*Fourth*, the ALJ determined that plaintiff had a moderate limitation adapting or managing himself. *Id.* Plaintiff alleged "he did not like change and tried to avoid situations that increased his stress." *Id.* But, the ALJ found, plaintiff, with consistent mental health care, "demonstrated significant improvement in gaining coping skills" establishing a moderate limitation in "adapting or managing oneself." *Id.* (citing Exs. B14F/176–77, B16F/2–15, B16F/23–49, B16F/53, B16F/60, B17F/13–14).

After considering all four criteria listed in Paragraph B, the ALJ concluded that plaintiff's "mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation," and, as a consequence, the ALJ concluded that "the 'paragraph B' criteria [were] not satisfied." *Id.* at 23 (AR 22).

On appeal, plaintiff challenges each of the findings for the 12.04 or 12.06 Listing, as described above. He cites other evidence that, he contends, establishes a greater limitation than

8

the ALJ determined. Plaintiff begins by arguing that the ALJ used plaintiff's daily activities to establish he was moderately limited but neglected to consider the extent to which he was able to participate in those activities. Doc. 14 at 18. Plaintiff provides a specific example—his inability to count change; he suggests the record illustrates that he can't count change in "the commonly accepted way" and, instead, he is only "able to confirm the amount of money that he has[.]" *Id.* This line of reasoning is not compelling for two reasons.

*First*, the ALJ considered the extent to which plaintiff could participate in activities. For example, the ALJ found that the plaintiff "reported that he enjoyed playing the guitar with other musicians once or twice a week or listened to others play music, and he noted no difficulty getting along with his friends." Doc. 11-3 at 22 (AR 21). Also, by 2020, plaintiff had experienced a notable and "improved ability to leave home to get movies from the library, go to the movies with his girlfriend, and attend a Super Bowl party with friends." *Id.* at 29 (AR 28). Plaintiff cannot establish error by "the mere fact that there is evidence which might support a contrary finding[.]" *Nicholas P. S. v. Saul*, No. 20-2360-JWL, 2021 WL 2711172, at *7 (D. Kan. July 1, 2021). Indeed, the "'possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.'" *Id.* (quoting *Lax*, 489 F.3d at 1084). Thus, the court cannot find that the ALJ improperly mischaracterized and ignored evidence. Just the opposite, the ALJ supported his findings with substantial evidence from the administrative record, including plaintiff's medical records.

*Second*, plaintiff's argument misapprehends the ALJ's decision. The task of the ALJ is not to determine the extent to which plaintiff can or can't participate in daily activities. Instead, the ALJ must assess whether plaintiff faces enough limitations to qualify as having an

impairment, as the Listing defines that term. When considering subjective statements about plaintiff's mental health, the ALJ was tasked with a credibility determination. "Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan v. Astrue*, 552 F.3d 1182, 1190–91 (10th Cir. 2008) (quotation cleaned up). So "long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, he need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (citation and internal quotation marks omitted). "[C]ommon sense, not technical perfection, is the [court's] guide." *Id.*

Applying these principles, the court concludes that substantial evidence supports the ALJ's finding that plaintiff's statements about the intensity, persistence, and limiting effects of his psychiatric symptoms don't comport with the record. The ALJ reviewed the record thoroughly, considering consultative examinations from 2018 to 2020. Doc. 11-3 at 27–29 (AR 26–28). The court will not substitute its judgment for the ALJ's conclusion that "the objective evidence of record does not support [plaintiff's] subjective symptom reports." *Id.* at 29 (AR 28). Also, the court can't find that the ALJ erred when he concluded that "the severity of [plaintiff's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of [L]istings 12.04 and 12.06." *Id.* at 21 (AR 20).

### B.   The ALJ did not err in his conclusion that plaintiff met neither a 11.14A or 11.14B listing.

Plaintiff next challenges the ALJ's finding that he did not meet the 11.14 Listing. Here, plaintiff doesn't argue that he meets the 11.14(A) Listing for peripheral neuropathy on account of his diabetes. Doc. 14 at 22. Instead, plaintiff argues, the ALJ erred by failing to make a

determination whether plaintiff meets the 11.14(B) Listing. *Id.* This argument is not persuasive. Listing 11.14(B) requires not only a marked physical limitation, but also, a marked limitation in one of the areas of mental functioning, which must stem from plaintiff's neurological disorder. 20 C.F.R. Pt. 404, Subpt. P, App'x. 1, § 11.00(G)(2). Plaintiff argues he should've met this listing based on "his hands and reduced grip strength" in conjunction with his "inability to maintain stable housing throughout the entire period in the record as well as his inability to maintain his medication regimen or any meaningful relationships." Doc. 14 at 22. This argument falls short for two principal reasons as well.

*First*, the ALJ's 11.14(B) finding is necessarily linked to plaintiff's argument about his psychiatric health. As already discussed, the ALJ considered the evidence about plaintiff's ability to maintain relationships. Doc. 11-3 at 22 (AR 21). And, the ALJ concluded that the overall record only supported a "finding [of] a moderate limitation in this area." *Id.* Also, when weighing the evidence to determine whether plaintiff met Listing 12.04 or 12.06 the ALJ considered plaintiff's continued homelessness. The ALJ reasoned that plaintiff's ability to navigate difficult tasks (such as homelessness during his substance use disorder) and mental impairments established that he did not face marked or severe limitations based on his psychiatric health. Doc. 11-3 at 23 (AR 22). Also, plaintiff "reported securing housing by the time of the hearing[.]" *Id.* at 29 (AR 28). And, for his hands and grip strength, the ALJ found that plaintiff's medical records showed plaintiff "consistently maintained a normal gait, intact strength, and good coordination with intact dexterity despite some diminished sensation in his hands and feet." *Id.* (citing Exs. B3F/9, B3F/11, B5F/32–33, B9F/2–3, B11F/44–45, B18F/8, B18F/65); *see also id.* at 21 (AR 20) ("Neurological examinations and testing of the claimant revealed generally normal gait and motor strength, despite some diminished sensation in the

11

claimant's feet and lower legs, and he maintained dexterity in both hands[.]" (citing Exs. B3F/9, B3F/11, B5F/32–33, B9F/2–3, B11F/44–45, B18F/8, B18F/65).  Based on the ALJ's analysis of plaintiff's symptoms and his citation to the medical record, the ALJ was well within the realm of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" that plaintiff didn't meet the requirements of Listing 11.14.  *Noreja*, 952 F.3d at 1178.

*Second*, plaintiff's argument misconstrues the assignment of a federal district court when it considers a social security appeal.  The standard here is substantial evidence.  The court isn't permitted to reweigh evidence.  *Lax*, 489 F.3d at 1084.  If ALJ's conclusion is supported by substantial evidence, the court will not find the ALJ erred.  Here, plaintiff asks the court to reverse the ALJ's decision by making its own finding whether plaintiff meets Listing 11.14(B).  As the ALJ found, plaintiff didn't meet the Listing for 11.14(A), or extreme limitations.  Doc. 11-3 at 21 (AR 20).  So, by logical extension, the ALJ's reasoning covers marked limitations in physical functioning as well.  *See id.* (citing medical evidence that showed "[n]eurological examinations and testing of the [plaintiff] revealed generally normally gait and motor strength, despite some diminished sensation in the [plaintiff's] feet and lower legs, and he maintained dexterity in both hands[.]").

Plaintiff argues that the ALJ erred by failing to take "into account the interplay of a claimant's physical, as well as mental impairments" because the "effects of one often limit the other[.]" Doc. 14 at 23.  But, as defendant correctly notes, to meet Listing 11.14(B), "the mental functional problems must stem from the [plaintiff's] neurological disorder."  Doc. 19 at 9 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00(G)(2)(b) ("Marked limitation and mental functioning.  For this criterion, a marked limitation means that, *due to the signs and symptoms of*

12

*your neurological disorder*, you are seriously limited in the ability to function independently. . . ." (emphasis added)).

Here, plaintiff fails to link any of his psychiatric limitations to his diabetic peripheral neuropathy. In the administrative proceeding, plaintiff claimed his homelessness was linked to his diabetes. And yet the record shows that, by 2019, he had secured housing, suggesting an improvement in his condition. Doc. 11-3 at 29 (AR 28). Plaintiff also claims his inability to maintain his medical regimen was linked to his diabetic peripheral neuropathy. Doc. 14 at 22. The ALJ's opinion saw it differently, concluding that plaintiff struggled to maintain compliance with diabetes management "due to problems with insurance." Doc. 11-3 at 25 (AR 24) (citing Ex. B6F/2). Finally, plaintiff alleges that the ALJ should have found his inability to maintain meaningful relationships was linked to his diabetic peripheral neuropathy. Doc. 14 at 22. But, the record is rife with contrary evidence. For example, the ALJ concluded, based on several of plaintiff's medical records, that plaintiff "continued to maintain good relationships with peers and providers when sober and compliant with psychotropic medications and expressed interest in increasing his positive relationships[.]" Doc. 11-3 at 22 (AR 21) (citing Exs. B14F/106–09, B14F/176, B16F/5, B16F/60, B17F/14).

In sum, plaintiff fails to show that the ALJ erred by concluding that plaintiff didn't meet the requirements of Listing 11.14. Instead, the ALJ's opinion provides sufficient information to demonstrate he appropriately considered the evidence when reaching his conclusion that plaintiff's impairments don't meet the requirements of Listing 11.14. So, plaintiff's arguments about Listing 11.14 provide no reason to reverse the ALJ's decision.

### C. The ALJ did not err in his conclusions about plaintiff's RFC.

Last, the court considers plaintiff's argument that the ALJ's RFC finding was erroneous because the evidence contained in the record doesn't support his conclusion. The RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis"—meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It determines the most that an individual can do, despite their limitations. *Id.* ("RFC is not the *least* an individual can do despite his or her limitation or restrictions, but the *most*.").

The "ALJ, not a physician, is charged with determining a claimant's RFC from the medial record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). The RFC assessment is an administrative determination, not a medical one. *McDonald v. Astrue*, 492 F. App'x 875, 885 (10th Cir. 2012) (citing SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996)). The ALJ should base the RFC determination on "all of the evidence in the record, not only the medical evidence[.]" *Dixon v. Apfel*, No. 98-5167, 1999 WL 651389, at *2 (10th Cir. Aug. 26, 1999). The ALJ's assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8p, 1996 WL 374184, at *7.

Here, the ALJ determined the plaintiff "has the [RFC] to perform light work[.]" Doc. 11-3 at 23 (AR 22). The ALJ also found plaintiff should "never climb ladders, ropes and scaffolds; and can frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl." *Id.* Also, plaintiff can "occasionally use foot controls bilaterally" and "can frequently handle, finger, and feel bilaterally." *Id.* The ALJ explained that, in reaching this finding, he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with

14

the objective medical evidence and other evidence, based on the requirements of" 20 C.F.R. § 416.929 and SSR 16-3p. *Id.* Also, the ALJ noted, he "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of" 20 C.F.R. § 416.920c. *Id.*

In a nutshell, plaintiff contends that the ALJ's finding that plaintiff could stand for six to eight hours a day failed to take into account his physical limitations. Doc. 14 at 25. The ALJ concluded that plaintiff could perform light work but could not perform the work he had performed in his past, that of a Fast Food Cook. Doc. 11-3 at 32 (AR 31). But, the ALJ did find that significant work was available in the national economy in positions the plaintiff was capable to perform, such as, housekeeping, classifier, or a marker. *Id.* at 33 (AR 32). Plaintiff disputes this finding based on: (1) his physical health, and (2) the ALJ placing too much weight on alleged improvements to the plaintiff's health. The court addresses each argument, below.

### 1. Plaintiff's physical health

Plaintiff raises a slew of issues about his physical health to support his argument that the ALJ erred by finding that he was capable of light work. Specifically, plaintiff cites his "degenerative disc disease, knee surgery, broken ankle, and the effects of his diabetes." Doc. 14 at 25. The ALJ discussed the degenerative disc disease, and the issues with the plaintiff's knee, finding them both severe but not severe enough to meet any of the listed impairments. Doc. 11-3 at 19–23 (AR 18–22). The ALJ discussed the effects of plaintiff's diabetes at great length, as shown in the analysis of the Listing 11.14 and for the RFC conclusion. *Id.* at 21, 24–32 (AR 20, 23–31). Also, plaintiff argues his diabetes is more severe than the ALJ concluded because his diabetes—coupled with his mental health problems—cause him to neglect his blood glucose regularly, to have high levels of blood sugar, and to snack at night. Doc. 14 at 25. Plaintiff argues that his diabetes has become more severe due to his mental health problems, as he is

15

unable to comply with the required treatments. *Id.* But, the ALJ found that during the last year, plaintiff's mental health problems had improved with treatment and sobriety. Doc. 11-3 at 27–28 (AR 26–27). And, in turn, plaintiff reported that he was better able to take care of his physical health as his mental health improved. *Id.*

Also, the ALJ considered plaintiff's ankle. Based on the record, the ALJ concluded that plaintiff's "history of [a] left ankle fracture" had not "substantially affected [his] gait or mobility for a period of twelve months or more." *Id.* at 19 (AR 18) (citing Exs. B2F/33, B2F/42, B3F/8, B5F/20–26, B8F/2). Because the ALJ supported all of these findings about plaintiff's physical health with medical evidence from the record, the ALJ's determination that plaintiff is capable of performing light work is supported by substantial evidence. The ALJ did not err by making this finding.

### 2. Improvement with treatment

Plaintiff argues that the ALJ made statements about his diabetes improving with treatment, but neglected to mention other ailments, and that these conclusions "are only meant to mislead the subsequent factfinder." Doc. 14 at 26. The court disagrees. The ALJ thoroughly discussed plaintiff's limitations stemming from diabetes, peripheral neuropathy, depression, and back pain. For purposes of his RFC determination, the ALJ correctly stated that he had to "evaluate the intensity, persistence, and limiting effects of [plaintiff's] symptoms." Doc. 11-3 at 24 (AR 23).

The ALJ considered the medical and other evidence about plaintiff's impairments. Records prepared near the application date showed plaintiff had "experienced improved diabetic control" and that he had "normal movements and muscle strength without noted neuropathy symptoms[.]" *Id.* Dr. Pravin G. Sampat and Dr. C.A. Parsons found that plaintiff was capable of performing light work, with Dr. Sampat finding that plaintiff could perform frequent kneeling,

crouching, and crawling, and Dr. Parsons concluding that plaintiff could perform certain postural activities with unlimited balancing. *Id.* at 29–30 (AR 28–29) (citing Exs. B4A/9–10, B6A/12–13). The ALJ however, found that "given the plaintiff's diminished sensation and limited range of motion, the record appears more consistent with limiting [him] to frequent balancing, no exposure to workplace hazards, and only occasional exposure to vibrations. *Id.* at 30 (AR 29). The ALJ based this RFC finding on records which showed plaintiff "consistently maintained a normal gait, intact strength, and good coordination with intact dexterity despite some diminished sensation in his hands and feet." *Id.* at 29 (AR 28).

Also, as it applies to plaintiff's back pain, in 2018 an examiner "observed no impairment in the [plaintiff's] walk, despite a decreased range of motion in the lumbar spine[.]" *Id.* at 25 (AR 24). The ALJ also noted that the record showed that plaintiff, at this examination, "did not use an assistive device, demonstrated no difficulty getting on and off the examination table, and had only mild difficulty with heel and toe walking, squatting and hopping." *Id.* And, as it applies to plaintiff's depression, the ALJ considered nearly two years of mental health treatment that ranged in severity. But by February 2020, plaintiff had "reported noted improvement in his depression symptoms[.]" *Id.* at 29 (AR 28). Based on the cited evidence, the ALJ supported his RFC finding with substantial evidence from the record. This court must "'neither reweigh the evidence nor substitute [its] judgment for that of the agency.'" *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004)). The court concludes that the ALJ, when determining plaintiff's RFC, did not err when he considered plaintiff's diabetic, mental health, and other improvements.

### 3. Conclusion

The ALJ conducted a thorough review of the evidence. Based on that evidence, the ALJ reached a conclusion about plaintiff's limitations and his RFC, and "the medical evidence record, statements of [plaintiff] and the opinion evidence" support those conclusions. Doc. 11-3 at 31 (AR 30). The ALJ's decision included the required "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8p, 1996 WL 374184, at *7; *see also Terry v. Colvin*, No. 14-2110-JWL, 2015 WL 400907, at *11 (D. Kan. Jan. 28, 2015) (explaining that SSR 96-8p's required narrative discussion doesn't require "citation to a medical opinion, or even to medical *evidence* in the administrative record for each RFC limitation assessed" but does require the ALJ to "describe how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC assessment" (citations and internal quotation marks omitted)). The decision thus shows that the ALJ considered the entire record and appropriately cited the reasons for accepting and rejecting the record evidence used to support the RFC determination. *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). The ALJ didn't err in reaching the conclusions about plaintiff's RFC.

## IV. Conclusion

After considering the arguments in the parties' briefs and conducting its own review of the administrative record, the court concludes that substantial evidence supports the ALJ's decision.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Commissioner's decision denying plaintiff's application for Supplemental Security Income is affirmed. The court

directs the Clerk to enter Judgment under the fourth sentence of 42 U.S.C. § 405(g) affirming the Commissioner's final decision.

**IT IS SO ORDERED.**

**Dated this 7th day of September, 2022, at Kansas City, Kansas.**

                                          **s/ Daniel D. Crabtree**
                                          **Daniel D. Crabtree**
                                          **United States District Judge**